## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA

### Roanoke Division

**SHEBRI STACY DILLON, No. 1747708**

      **Petitioner,**

**v.**                                **Civil Action No. 7:22cv00215**

**DIRECTOR,**
**DEPARTMENT OF CORRECTIONS,**

      **Respondent.**

### BRIEF IN SUPPORT OF MOTION TO DISMISS AND RULE 5 ANSWER

The Director of the Virginia Department of Corrections, by counsel, submits the following brief in support of his Motion to Dismiss and Rule 5 Answer:

1.      The petitioner, Shebri Stacy Dillon, is detained pursuant to an order of the Circuit Court of Roanoke County, entered on July 26, 2016.   A jury convicted Dillon of embezzlement, grand larceny, larceny of a firearm, three counts of uttering a forged public document, use of a forged certificate of title, obtaining certificate of title, perjury, credit card fraud, obtaining money by false pretenses, and money laundering. The jury imposed a sentence of 39 years' incarceration. The trial court imposed the jury's sentence but ran nine years of the jury's sentence concurrent with the remaining sentences for an active sentence of 30 years' incarceration.

2.      Dillon appealed to the Court of Appeals of Virginia, which granted in part and denied in part the petition for appeal. In an unpublished opinion, the Court of Appeals affirmed that the trial court had jurisdiction for the uttering forged public record charges. *Dillon v.*

*Commonwealth*, Record No. 1375-16-3, 2017 Va. App. LEXIS 252 (Va. Ct. App. Oct. 10, 2017).
Dillon appealed to the Supreme Court of Virginia which refused the appeal on July 13, 2018.
(Record No. 171628).

State Habeas Petition

3. On June 6, 2019, Dillon filed the petition for a writ of habeas corpus in the Circuit
Court for Roanoke County.  In the petition, Dillon alleged the following claims, tracking the
petitioner's language as closely as possible:

I.    Prosecutorial Misconduct.

    a.  Prosecutor intimidated witness Michael Wagmaun
    b.  Failure to disclose plea deal with witness Linda Young (co-defendant)
    c.  Prosecution misconstrued and misrepresented evidence
    d.  Prosecution removed petitioner's subpoena from CW file to testify against Thompson
    e.  Prosecution misrepresented letter turned over to CW
    f.  Prosecution closing was prejudicial, misleading and told jury to disregard the law
    g.  Prosecutor asked jury to sentence petitioner as a deterrent, not for the crimes she committed

II.   The trial court committed plain error after forgery indictment was struck
    a.  There was no forgery charge to support remaining charges
    b.  Power of attorney and deed were not "public records"
    c.  The "forged public record" (deed) still stands as a legal conveyance
    d.  After-discovered evidence – a civil suit regarding the deed was settled out of court, therefore, "forged" deed still good
    e.  Money laundering conviction should be reversed as there is no underlying forgery or uttering convictions

III.  Ineffective Assistance of Counsel

    a.  Counsel's behavior was inappropriate – seeking a relationship beyond the attorney/client relationship;
    b.  Counsel failed to inform petitioner of a court date, Sept. 3, 2015 regarding letter turned over to CW and counsel was unprepared for the hearing

c.  Counsel was deficient because he made petitioner serve her own subpoenas (creating a conflict of interest) and failed to call petitioner as a witness, prepare a defense, adequately question witnesses,

d.  Counsel failed to adequately explain plea bargain process and petitioner asserts she would have taken plea.

e.  Counsel failed to perform adequate pretrial investigation –

    1.  Counsel failed to timely try to get handwriting expert

    2.  Counsel failed to subpoena witnesses for jury sentencing

    3.  Counsel failed to meet with witnesses

    4.  Counsel failed to investigate leads and defenses provided by petitioner:

        a.  failed to investigate petitioner testifying for Commonwealth

        b.  failed to obtain transcripts from previous hearings

        c.  failed to obtain records showing Thompson's estranged wife went to the home prior to Thompson's arrest and had to be removed

        d.  failed to familiarize himself with jail phone calls

    5.  Counsel failed to investigate Commonwealth's witnesses;

    6.  Counsel failed to understand details of case and elements of conviction;

    7.  Counsel failed to inform petitioner that her file was taken from his possession.

f.  1.  Counsel failed to prepare petitioner for trial and consult about rights and expectations.

    2.  Failed to inform petitioner about her right to testify and failed to call her as a witness.

    5.[1]  Counsel failed to prepare petitioner for jury sentencing; failed to get witnesses for sentencing.

g.  Counsel failed to seek a continuance due to petitioner's emotional state after her boyfriend died and she was unable to assist in her defense.

h.  Failed to develop a defense

    1.  failed to introduce evidence – Sean Elkins / Donald Ingram where assets went – Thompson regarding drug use/activities / young's motive to lie – evidence of estranged wife – motive for Thompson to place his property in trust to pet

---

[1] The petition did not contain any claims labeled f(3) or f(4).

2.    Counsel failed to strike all other charges after forgery struck

3.    (a) Failed to present evidence mentioned in opening, i.e., government too aggressive, this was a civil matter not criminal; (b) once forgery charge struck – all of the charges should have been dismissed counsel failed to raise issues and to strike larceny charges as there was no proof of value.

4.    failed to object to prosecutorial misconduct as noted in claim I

5.    (a) failed to object to the presentation of forgery evidence, as forgery charge was struck; (b) failed to present evidence mentioned in opening; and (c) failed to cross Thompson on how petitioner knew card pin

IV.    Counsel ineffective at sentencing and on appeal –

a.    Counsel failed to object to the restitution amount of $98,000 and failed to object for being sentenced to something not a crime "stealing a house"

b.    Counsel failed to know details of record e.g., Thompson was held on 35k bond not without bond and failed to recognize petitioner was not convicted of forgery and should have argued that on appeal.

4.    The circuit court dismissed Dillon's petition on January 15, 2021.  (UPDATE EXHIBIT).

5.    Dillon appealed to the Supreme Court of Virginia, which refused her petition for appeal on March 24, 2022.  (Supreme Court of Virginia Record No. 210212).

**Federal Habeas Petition**

6.    On or about April 18, 2022, Dillon filed this current habeas petition, wherein she appears to challenge her convictions on the following grounds:

Prosecutorial Misconduct.

1.    The prosecutor misappropriated case connections and tampered with evidence to prevent Dillon from putting on a defense.  (Doc. 1 at 6).

2.    The prosecutor instructed the jury to disregard [the] law when convicting Dillon, violating her Fifth and Sixth Amendment Rights.  (Doc. 1 at 17).

3.  The prosecutor instructed the jury to sentence Dillon for crimes she was not on trial for, as a soci[e]tal det[e]rrent to mob bosses, gang bosses and in the interest of real estate transactions.  (Doc. 1 at 27).

4.  Prosecutor improperly vouched for his witness's credibility, violating Dillon's Fifth Amendment due process rights.  (Doc. 1 at 34).

5.  Prosecutor failed to disclose the plea deal with Linda Young, violating Dillon's Fifth and Fourteenth Amendment Rights.  (Doc. 1 at 40).

6.  The prosecutor and detective threatened witnesses to prevent Dillon from putting on her defense.  (Doc. 1 at 47).

Trial Court Error

7.  Prosecutorial Misconduct/Trial Court Error.  The court and the prosecutor induced and allowed plain error when the prosecutor continued to prosecute Dillon despite losing the entire foundation of his case.  (Doc. 1 at 53).

Ineffective Assistance of Trial Counsel

8.  Failure to inform Dillon of a pivotal hearing on her case.  (Doc. 1 at 67).

9.  Failed to reasonably investigate and impeach the Commonwealth's witnesses.  (Doc. 1 at 76).

10.  Trial counsel misinformed Dillon of the time she faced in prison.  (Doc. 1 at 89).

11.  Failed to secure a handwriting expert in Dillon's defense.  (Doc. 1 at 97).

12.  Failed to obtain transcripts from Dillon's April 20, 2015 hearing.  (Doc. 1-1 at 5).

13.  Failed to obtain police reports for the year prior pertaining to the 3822 Jae Valley Road property where Dillon and Thompson resided.  (Doc. 1-1 at 12).

14.  Failed to introduce any of the evidence that Dillon had given him.  (Doc. 1-1 at 19).

15.  Failed to prepare Dillon and her case for jury sentencing, lying to the court to try to cover his inadequacy.  (Doc. 1-1 at 27).

16.  Failed to inform Dillon of her right to testify until called upon at trial, telling her then that if she testified she was wa[i]ving her right to appeal.  (Doc. 1-1 at 37).

17.  Failed to request a continuance of trial.  (Doc. 1-1 at 46).

18. Trial counsel created a conflict of interest by behaving inappropriately with Dillon. (Doc. 1-1 at 52).

19. Failed to move to strike and dismiss all charges once the forgery charge was struck. (Doc. 1-1 at 62).

20. Failed to object to prosecutorial misconduct. (Doc. 1-1 at 70).

21. Failed to familiarize himself with the details of Dillon's case and the elements of her convictions.  (Doc. 1-1 at 79).

Ineffective Assistance of Counsel (Rob Dean)

22. Failed to object to an outrageous and unsubstantiated amount of restitution.  (Doc. 1-1 at 91).

23. Failed to object to Dillon being sentenced by the judge for "stealing a house."  (Doc. 1-1 at 96).

24. Failed to familiarize himself with the details of the case, filing incorrect motions and inadequate briefs.  (Doc. 1-2 at 1).

25. Refused to raise a claim of prosecutorial misconduct on appeal (Doc. 1-2 at 9).

Cumulative

26. Dillon was denied the right to due process, the right to effective counsel, and her convictions are contrary to law and evidence.  (Doc. 1-2 at 15).

## **Exhaustion and Procedural Default**

7.     "[A] federal court may not grant a writ of habeas corpus to a petitioner in state custody unless the petitioner has first exhausted her state remedies by presenting his claims to the highest state court." *Baker v. Corcoran*, 220 F.3d 276, 288 (4th Cir. 2000).  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  In order to meet the exhaustion requirement, a petitioner "must have presented to the state court 'both the operative facts and the controlling legal principles.'" *Kasi v. Angelone*, 300 F.3d 487, 501-02 (4th Cir. 2002) (quoting *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997).  Petitioner has exhausted all of her state remedies on the issues before this Court except for claims 10, 25, and 26 which was never raised in any state

proceeding. It is now too late to bring those claims in any state court proceeding. *See* Va. Code § 8.01-654 (A)(2). Consequently, those claims are simultaneously exhausted and defaulted. *Gray v. Netherland*, 518 U.S. 152, 162 (1996). The default is not excused by *Martinez v. Ryan*, 566 U.S. 1, 16 (2012), as the claims are not substantial.

## Defaulted Claims

8.      In Claims 1-7, Dillon raises allegations of prosecutorial misconduct and trial error.[2] The circuit court dismissed the claims of prosecutorial misconduct and trial court error claims based on the procedural default rule enunciated in *Slayton v. Parrigan*, 215 Va. 27, 29, 205 S.E.2d 680, 682 (1974), because Dillon could have raised these claims at trial and on direct arobinson, michppeal. This procedural default is an adequate and independent state law ground rendering the claim defaulted for purposes of federal habeas review.  *See Vinson v. True*, 436 F.3d 412, 417 (4th Cir. 2006); *see also McDonald v. Clarke*, No. 7:16C00448, 2017 U.S. Dist. LEXIS 214803, at *20-22 (W.D. Va. July 27, 2017) (holding claims of prosecutorial misconduct, such as alleged *Brady* violations, are barred under *Parrigan* because they could have been raised at trial or on appeal).  Thus, federal habeas corpus review is precluded.

## Merits Standard of Review

9.      Dillon's claims are without merit.  Review of the current claims is governed by the Anti-terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Of the AEDPA standard of review, the United States Supreme Court has stated:

> If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). ***It preserves authority to issue the writ in cases where there***

---

[2] These claims appear to correspond to claim I, parts a-g in Dillon's state habeas petition.

> *is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther.*

*Harrington v. Richter*, 562 U.S. 86, 102 (2011) (emphasis added). The AEDPA standard requires deference to the state court's merits decision unless the decision was (1) contrary to, or an *unreasonable* application of, a clearly established United States Supreme Court decision, or (2) based on an *unreasonable* determination of facts. *See* 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 403-13 (2000). "[F]ederal habeas relief may not be granted unless the state court's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.' §2254(d)(1)." *Booth-El v. Nuth*, 288 F.3d 571, 575 (4th Cir. 2002).

10. Section 2254(d) provides a "highly deferential standard for evaluating state court rulings,' . . . which demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (citation omitted). "Under § 2254(d)'s 'unreasonable application' clause, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [the law] incorrectly." *Id.* at 24-25. Further, in *Cullen v. Pinholster*, 563 U.S. 170(2011), the Supreme Court stated:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time *i.e.*, the record before the state court.

*Id.* at 181-82. Indeed, "[b]y its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court." *Richter*, 562 U.S. at 98. Moreover, "[t]here is no text in the statute requiring a statement of reasons. The statute refers only to a 'decision,' which resulted from an 'adjudication.'" *Id.*

11.     An "unreasonable application of federal law is different from an *incorrect* application of federal law."   *Williams v. Taylor*, 529 U.S. 362, 410 (2000).   Rather, an "unreasonable application" means an application that is objectively unreasonable.   *See id.* at 409. Unreasonable application does not mean clear error.   "The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."   *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003).   Furthermore, "a determination on a factual issue made by a State court shall be presumed correct."   *Tucker v. Ozmint*, 350 F.3d 433, 439 (4th Cir. 2003) (quoting 28 U.S.C. § 2254(e)(1)).

12.     In addition, as to any claims of insufficient evidence, a petitioner is only entitled to "habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."   *Jackson v. Virginia,* 443 U.S. 307, 324 (1979); *see also Cavazos v. Smith*, 132 S. Ct. 2 (2011) (discussing application of § 2254 deference in context of *Jackson*).

13.     This Court's review is thus "doubly deferential."   *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (citing *Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (per curiam)) (citations omitted). This Court takes a "highly deferential" look at counsel's performance, through the "deferential lens of § 2254(d).".   *Pinholster*, 563 U.S. at 581 (

## Ineffective Assistance of Counsel

14.     The petitioner has raised allegations of ineffective assistance of counsel.   The state habeas court's rulings on his ineffective counsel claims, however, were not contrary to, or an unreasonable application of a United States Supreme Court decision, nor were they based on an unreasonable determination of facts.   Therefore, this Court should defer to the merits decision of the state habeas court.

15.     The petitioner cannot meet the highly demanding standard set forth for such claims in *Strickland v. Washington*, 466 U.S. 668 (1984).   Under *Strickland*, Terry has the burden to show that his attorney's performance was deficient ***and*** that he was prejudiced as a result.  *See Strickland*, 466 U.S. at 687.   "The essence of an ineffective assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict suspect."  *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986).   "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Strickland*, 466 U.S. at 690.  *See Burket v. Angelone*, 208 F.3d 172, 189 (4th Cir. 2000) (reviewing court "must be highly deferential in scrutinizing [counsel's] performance and must filter the distorting effects of hindsight from [its] analysis").

16.     The first prong of the *Strickland* test, the "performance" inquiry, "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Strickland*, 466 U.S. at 687.  *See Yarborough v. Gentry*, 540 U.S. 1, 8 (2003) ("The Sixth Amendment guarantees reasonable competence, not perfect advocacy judged with the benefit of hindsight.").

17.     The second prong of the *Strickland* test, the "prejudice" inquiry, requires showing that there is a "***reasonable probability*** that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694 (emphasis added). A reasonable probability is a "probability sufficient to undermine confidence in the outcome."  *Id.* Moreover, the prejudice showing requires a "substantial" likelihood of a different result, not merely one which is "conceivable."  *Richter*, 562 U.S. at 112.

18.     An ineffective counsel claim may be disposed of on either prong because deficient performance and prejudice are "separate and distinct elements."  *Spencer v. Murray*, 18 F.3d 229, 232-33 (4th Cir. 1994).  *See Strickland*, 466 U.S. at 697.

Response to Claims

19.     In Claim 8, Dillon alleges that trial counsel failed to inform her of a "pivotal hearing."  (Doc. 1 at 67).  Specifically, she claims trial counsel failed to alert her to the hearing date for the Commonwealth's motion *in limine* which sought to exclude a letter Dillon received from Thompson while he was in jail.  (Doc. 1 at 68-70).  She claims that the hearing resulted in Dillon's inability to use this letter, which would have  demonstrated what Dillon did with Thompson's money and belongings, in her defense.  (Doc. 1 at 71).  Had she been present, she claims she would have "prevent[ed] the motion from being granted [ ] allowing her to defend herself fairly and fully."  (Doc. 1 at 71-72).

20.     With respect to this claim, the circuit court[3] found that Dillon failed to establish deficient performance or prejudice under *Strickland*.  Specifically, the circuit court found:

> The petitioner has failed to allege how counsel was unprepared for the hearing and what counsel should have done differently. This failure to proffer is fatal to his claim. *Muhammad v. Warden*, 274 Va. 3, 19, 646 S.E.2d 182, 195 (2007), *Cf. Beaver v. Thompson*, 93 F.3d 1186, 1195 (4th Cir. 1996) ("an allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced."). *See also Bassette v. Thompson*, 915 F.2d 932, 940-41 (4th Cir. 1990) (petitioner must allege "what an adequate investigation would have revealed.")   "[W]ithout a specific, affirmative showing of what the missing evidence or testimony would have been, 'a habeas court cannot even begin to apply *Strickland*'s standards because it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiency in counsel's performance.'"  *Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994) (quoting *United States ex rel. Partee v. Lane*, 926 F.2d 694, 701 (7th Cir.

---

[3] The circuit court's order dismissing the state habeas petition was the last reasoned state court opinion.  *Ylst v. Nunnemaker*, 501 U.S. 797 (1991).

1991)) (emphasis added).

(DOC 1-3 at 69-70; Pet. Ex. 28 at 7-8).  Moreover, the circuit court found that Dillon failed to establish prejudice where the "trial court did not rule on the Commonwealth's motion *in limine*, to exclude the letter at issue from evidence. The trial court simply took the matter under advisement until trial."  (Id.).

21.     The state court's ruling was not contrary to or an unreasonable application of clearly established federal law as stated by the United States Supreme Court.  Nor was it based on an unreasonable determination of the facts.

22.     Accordingly, Claim 8 should be dismissed.

23.     In Claim 9, Dillon alleges that trial counsel failed to reasonably investigate and impeach the Commonwealth's witnesses.  (Doc. 1 at 76).  She alleges that counsel failed to investigate Thompson's financial status, his motive to lie, and the connection between Thompson's case to Dillon's case.  (Doc. 1 at 76-77).  She continues by claiming that trial counsel failed to investigate Linda Young, the notary who was the "lynchpin of the Commonwealth's case."  (Doc. 1 at 80).  The circuit court properly dismissed this claim, finding:

> Thompson's criminal behavior was the subject of pre-trial motions. The trial court ruled it was irrelevant at trial and counsel was not permitted to address unrelated criminal conduct of Thompson. In addition, Dillon argues that counsel should have asked Thompson why he did not bond out if he believed she was taking his possessions. However, according to Dillon, Thompson had a $35,000 bond and he was in jail for a crime to which he confessed and was going to be sentenced to jail. Dillon has failed to explain how Thompson could have bonded out when she had taken all of his assets. Even assuming he could bond out, his decision to try to bond out or not is not related to his belief of whether Dillon was taking his house and other possessions. Dillon also asserts that counsel should have pointed out differences in the testimony of Thompson and other Commonwealth's witnesses. Specifically, Thompson's testimony differed form Linda Young's testimony about whether Young and Thompson discussed taking care of Dillon and her kids and about how to do a power of attorney. Again, these inconsistencies were not material to the issues before the jury and the jury heard the testimony and was

> free to give it whatever weight it deemed appropriate.  As a result, Dillon has failed to establish either deficient performance or prejudice as required by *Strickland* and claim III(e)(5) must fail.

(DOC 1-3 at 79-80; Pet. Ex. 28 at 27-28).

24.    Because the circuit court's findings are not contrary to or an unreasonable application of federal law or an unreasonable determination of the facts, Claim 9 should be dismissed.

25.    As such, the circuit court's findings are not contrary to applicable federal law or an unreasonable determination of the facts.  Claim 10 should be dismissed.

26.    In Claim 11, Dillon alleges trial counsel failed to seek the assistance of a handwriting expert.  (Doc. 1 at 97).  The circuit court rejected this claim finding that the petitioner failed to establish either prong of the two-part test laid out in *Strickland* and made the following findings

> At issue were several documents that purported to be a power of attorney and a gift of deed to Dillon from Mr. Thompson. The notary who notarized these documents, Young, testified that Dillon signed Thompson's name and an expert for the Commonwealth testified that Thompson did not sign his name to those documents. An expert is not needed to offer an opinion as to handwriting. *See* Rule 2:701. In addition, Dillon has not proffered which expert counsel should have obtained or even what the anticipated testimony of such an expert would be or its impact on the trial. Indeed, the most Dillon says is that an expert would testify that it was "possible" or "likely" that Thompson did sign the documents. Even if an expert would have testified that it was "possible" that Thompson signed the documents, the Commonwealth's evidence was still overwhelming and there would be no reasonable probability of a different outcome. As a result, Dillon has failed to establish either deficient performance or prejudice as required by *Strickland* and claim III(e)(1) must fail.

(DOC 1-3 at 74; Pet. Ex. 28 at 12).

27.    The circuit court's finding was not contrary to or an unreasonable application of clearly established federal law or an unreasonable determination of the facts.  Therefore, claim 11 must fail.

28.     In Claim 12, Dillon asserts trial counsel failed to obtain transcripts from Dillon's April 20, 2015 hearing.  (Doc. 1-1 at 5).  She claims this transcript was from "the very first preliminary hearing" during which Thompson, Young, and Detective Finney testified.  (Doc. 1-1 at 5).  The circuit court found that this claim failed to satisfy the requirements of *Strickland*.  The circuit court determined:

> Dillon has failed to proffer that the transcripts of the preliminary hearing exist and that it was even possible for counsel to obtain those transcripts. Moreover, the differences in the testimony alleged by Dillon were so minimal that they would not create a reasonable probability of a different outcome. First, Dillon asserts that a police officer testified at the preliminary hearing that his investigation was complete but at trial acknowledged that he did not investigate Dillon testifying against Thompson. And second, according to Dillon, Thompson testified at the preliminary hearing that he gave Dillon his bank card and PIN numbers. However, at trial, Thompson testified that he did not give her the PIN numbers but that he knew that Dillon figured them out and he was alright with that, because he "trusted her." (Tr. 72). The minimal impeachment value of these two inconsistent statements were not sufficient to produce a reasonable probability of a different outcome. Consequently, Dillon has failed to establish either deficient performance or prejudice as required by *Strickland* and claim III(e)(4)(b) must fail.

(DOC 1-3 at 77; Pet. Ex. 28 at 15).

29.     Because the circuit court's determination was not contrary to applicable federal law or an unreasonable determination of the facts, Claim 12 fails and should be dismissed.

30.     In Claim 13, Dillon claims trial counsel failed to obtain police reports for the year prior pertaining to the 3822 Jae Valley Road property where Dillon and Thompson resided.  (Doc. 1-1 at 12).  She alleges that the police reports would demonstrate that Thompson's former wife "had to be removed by the police multiple times . . . for showing up unannounced and asserted that she was entitled to his belongings."  (Doc. 1-1 at 12).

31.     In finding this claim failed to satisfy either prong of *Strickland*, the circuit court found:

-14-

Dillon appears to be arguing that Thompson wanted to place his property into her name to protect it from his estranged wife while he was incarcerated. However, this argument must fail because Dillon disposed of all of Thompson's property while he was incarcerated. Certainly, Thompson did not want it protected from his estranged wife only to have everything taken by Dillon. If Dillon had maintained the property this might be a more plausible position. However, she sold his house, well below market value, disposed of all of the personal belongings and effects that were in the house, and sold his car and then kept the money. There is no argument that Thompson wanted that outcome. Therefore, Dillon has failed to establish either deficient performance or prejudice as required by *Strickland* and claim III(e)(4)(c) must fail.

(DOC 1-3 at 77-78; Pet. Ex. 28 at 15-16).

32.     The circuit court's finding is not contrary to applicable federal law or an unreasonable determination of fact.  Claim 13 should be dismissed.

33.     In Claim 14, Dillon alleges that trial counsel failed to introduce any evidence that Dillon had provided to him at trial.  (Doc. 1-1 at 19).  This includes Facebook messages between Dillon and Sean Elkins, receipts for the ATM at the jail, a photograph of Thompson wearing a red bandana and a hat with a marijuana emblem, text messages between Linda Young and Dillon, the original letter sent from Thompson to Dillon, text messages from James Dillon, and "angry" text messages from Thompson's ex-wife.  (Doc. 1-1 at 19-22).

34.     This claim was presented to the circuit court, which determined that it failed to satisfy both prongs of *Strickland*.  The circuit court stated,

Dillon claims that counsel should have introduced evidence to show that she paid debts of Thompson with the money from his account and Thompson's cousin received some of the items from Thompson's home. However, the debts paid by Dillon and the items alleged to have gone to the cousin fall far short of the total amount of money and personal items that were taken from Thompson, as shown by the restitution amount of $98,000. Such evidence, even if believed, would not have resulted in a reasonable probability of a different outcome. In addition, Dillon asserts that counsel should have impeached Thompson with a photograph to show he "glorified the criminal enterprises of drugs and gangs." Dillon does not proffer how the photograph would have been admissible for impeachment and the respondent is not aware of any rule to allow such impeachment. Reasonable counsel would not have tried to impeach a witness in manner not permitted by the

rules. "Of course, the Sixth Amendment does not require that counsel do what is impossible or unethical. If there is no *bona fide* defense to the charge, counsel cannot create one and may disserve the interests of his client by attempting a useless charade." *United States v. Cronic*, 466 U.S. 648, 667 (1984). Consequently, Dillon has failed to establish either deficient performance or prejudice as required by *Strickland* and claim III(h)(1) must fail.

(DOC 1-3 at 84-85; Pet. Ex. 28 at 22-23).

35.     This finding is not contrary to applicable federal law or an unreasonable determination of fact.  For these reasons, Claim 14 should be dismissed.

36.     In Claim 15, Dillon alleged that trial counsel "failed to prepare Dillon and her case for jury sentencing, lying to the court to try to cover his inadequacy." (Doc. 1-1 at 27).  Dillon claims that she was "completely unaware" that she would be sentenced by the jury following a guilty verdict.  (Doc. 1-1 at 27).  Further, she claims that she did not know she could present evidence through character witnesses, and therefore none were subpoenaed to testify on her behalf.  (Doc. 1-1 at 28).  Although she was able to call two people to come to the courthouse for her, she claims her trial counsel lied to the court, when trial counsel told the court he advised the witnesses to be present at a certain time to testify.  (Doc. 1-1 at 29-30).

37.     The circuit court rejected this claim and found:

This claim is without merit and directly refuted by the record. Counsel presented two witnesses at Dillon's sentencing at the conclusion of her jury trial. "The decision to call some witnesses and not others is an essential part of effective representation. Here, it demonstrates that counsel was making strategic choices, not that he failed to make those choices. Decisions relating to witness selection are normally left to counsel's judgment, and this judgment will not be second-guessed by hindsight.'" *Williams v. Armentrout*, 912 F.2d 924, 934 (8th Cir. 1990) (en banc) (quoting *Frank v. Brookhart*, 877 F.2d 671, 674 (8th Cir. 1989)); *see also Blanco v. Singletary*, 943 F.2d 1377, 1495 (11th Cir. 1991) ("The decision as to which witnesses to call as an aspect of trial tactics that is normally entrusted to counsel.") As this claim is refuted by the record, Dillon has failed to establish either deficient performance or prejudice as required by *Strickland* and claim III(f)(5) must fail.

(DOC 1-3 at 83; Pet. Ex. 28 at 21).

-16-

38.     This finding was not contrary to applicable federal law or an unreasonable determination of fact.  Claim 15 should therefore be dismissed.

39.     In Claim 16, Dillon alleges that trial counsel failed to inform Dillon of her "right to testify until called upon at trial, telling her then that if she testified, she was wa[i]ving her right to appeal."  (Doc. 1-1 at 37).  Dillon claims she would have testified how her case and Thompson's case were connected; that the notary, Linda Young's, testimony changed after Dillon sought a protective order against her son; and that Dillon did not steal anything or forge anyone's signature. (Doc. 1-1 at 38-41).

40.     Dillon presented this argument to the circuit court, which determined that she failed to satisfy either prong of the *Strickland* analysis.  In dismissing this claim, that court found:

> At trial, counsel stated that he intended to call the petitioner at trial as the last witness. However, after a recess for lunch, counsel indicated that the defense had no more witnesses and would rest. (See Pet. at 31-32). The clear inference from this exchange is that the petitioner was aware of her right to testify and ultimately she chose to not testify. In addition, she has failed to proffer what her testimony would have been. She merely states that she "would have undoubtedly shattered the deceptions of Thompson and Young, unveiling the truth that had been so meticulously avoided, and swayed the jury to find her not guilty." (Pet at 32). She fails to identify what, if any, credible factual information she would have provided to the jury. The evidence in this case was overwhelming that she forged the documents in question and sold the victim's home, car and furnishings without his permission. It is unlikely anything she would have testified to would have had a reasonable probability of creating a different outcome. Consequently, Dillon has failed to establish prejudice as required by *Strickland* and claim III(f)(2) must fail.

(DOC 1-3 at 82-83; Poet. Ex. 28 at 20-21).

41.     This finding was not contrary to applicable federal law or an unreasonable determination of fact.  Claim 16 should therefore be dismissed.

42.     In Claim 17, Dillon alleges trial counsel failed to request a continuance of trial in order to prepare and investigate the case, but also due to Dillon's "mental and emotional state."

(Doc. 1-1 at 46-47).  Dillon explains that her boyfriend was "decapitated in a car accident" five weeks prior to the trial, and that Dillon "was unable to adequately participate in her defense, and unable to identify the deceptions of counsel, due to her life happenings."  (Doc. 1-1 at 46-47).

43.    In finding that Dillon failed to satisfy either prong of *Strickland*, the circuit court dismissed this claim and stated:

> Dillon alleges that counsel was ineffective for failing to seek a continuance due to her mental state after Dillon's boyfriend died in a car crash five weeks before trial. Dillon states that she was unable to assist in her defense due to the loss. This claim is without merit. Further "[t]he orderly administration of justice requires that tactical matters, such as continuances, be left with counsel. Moreover, continuances rest within the sound discretion of the trial court." *Stockton v. Commonwealth*, 227 Va. 124, 141, 314 S.E.2d 371, 382 (1984).  *See also New York v. Hill*, 528 U.S. 110, 115 (2000) (lawyer has full authority to manage conduct of trial).  In addition, Dillon has failed to proffer what she would have done differently if she had obtained a continuance. This failure to proffer is fatal to her claim. *Muhammad*, 274 Va. at 19, 646 S.E.2d at 195 (2007), *Cf. Beaver*, 93 F.3d at 1195 ("an allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced."). *See also Bassette*, 915 F.2d at 940-41 (petitioner must allege "what an adequate investigation would have revealed.")  "[W]ithout a specific, affirmative showing of what the missing evidence or testimony would have been, 'a habeas court cannot even begin to apply *Strickland*'s standards because it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiency in counsel's performance.'" *Anderson*, 18 F.3d at 1221 (quoting *United States ex rel. Partee*, 926 F.2d at 701). Therefore, Dillon has failed to establish either deficient performance or prejudice as required by *Strickland* and claim III(g) must fail.

(DOC 1-3 at 81-82; Pet. Ex. 28 at 21-22).

44.    This finding was not contrary to applicable federal law or an unreasonable determination of fact.  Claim 17 should therefore be dismissed.

45.    In Claim 18, Dillon alleges that trial counsel "created a conflict of interest by behaving inappropriately with Dillon."  (Doc. 1-1 at 52).  She claims that he made her "uncomfortable" when he hugged her instead of shaking her hand, when he appeared "unannounced

and uninvited to the bar Dillon worked at," and when he shared a photograph of his sleeping toddler. (Doc. 1-1 at 52-54). Dillon appears to claim that the attorney-client relationship suffered after she did not reciprocate trial counsel's actions. (Doc. 1-1 at 55-56).

46. In determining that this claim failed to establish deficient performance or prejudice under *Strickland*, the circuit court found,

> Counsel was ineffective or he was not; it is irrelevant **why** counsel may have been ineffective. "Under *Strickland* the fact that an attorney used [alcohol] is not, *in and of itself*, relevant to an ineffective assistance claim. The critical inquiry is whether, for whatever reason, counsel's performance was deficient and whether that deficiency prejudiced the defendant." *Berry v. King*, 765 F.2d 451, 454 (5th Cir. 1985); *Caballero v. Keane*, 42 F.3d 738, 740 (2d Cir. 1994); *Young v. Zant*, 727 F.2d 1489, 1492-93 (11th Cir. 1984); *Middleton v. Evatt*, 77 F.3d 469 (table), 1996 WL 63038 (4th Cir. 1996). *See also Burdine v. Johnson*, 231 F.3d 950, 958, (5th Cir. 2000) (trial counsel sleeping in court not *per se* deficient performance). Moreover, the facts asserted by the petitioner do not establish counsel was seeking a relationship outside the attorney client relationship. Every instance referred to by the petitioner, *e.g.*, showing up at her place of employment to give her some documents related to her case, counsel was working on the petitioner's criminal case. There are no allegations of the attorney asking her out, or doing any actions not related to his work. Dillon has failed to establish counsel was acting unethically. As a result, Dillon has failed to establish either deficient performance or prejudice as required by *Strickland*, and claim III(a) must fail.

(DOC 1-3 at 68-69; Pet. Ex. 28 at 6-7).

47. This finding was not contrary to applicable federal law or an unreasonable determination of fact. Claim 18 should therefore be dismissed.

48. In Claim 19, Dillon alleges that trial counsel "failed to move to strike and dismiss all charges once the forgery charge was struck." (Doc. 1-1 at 62).

49. The circuit court rejected this claim, determining Dillon had not satisfied the requirements of *Strickland*. In so finding, the circuit court held:

> Dillon alleges that counsel was ineffective for failing "to strike all other charges after forgery struck." This claim is without merit. Dillion fails to understand why the trial court granted the motion to strike on the forgery charge. The issue before the court was whether the forgery was of a public document. The Commonwealth

argued that because the forged documents were filed with the court and became public documents, then Dillon was guilty of forging public documents. However, the trial court noted that at the time they were forged, they were not yet public documents, as required in the code. Therefore, the court granted the motion to strike, not because it believed the documents were not forged, but because the documents that were forged were not "public documents." As a result, counsel was not ineffective for failing to strike the remaining charges. Once the forged documents were filed with the court and were by used by Dillon to sell Thompson's items for her own benefit, she was still guilty of the remaining charges: embezzlement, grand larceny, larceny of a firearm, three counts of uttering a forged public document, use of a forged certificate of title, obtaining certificate of title, perjury, credit card fraud, obtaining money by false pretenses, and money laundering. Dillon has not articulated any legal or factual basis that counsel could have used to make a successful motion to strike on the remaining charges. Therefore, Dillon has failed to establish either deficient performance or prejudice as required by *Strickland* and claim III(h)(2) must fail.

(DOC 1-3 at 87; Pet. Ex. 28 at 25).

50.    This finding is not contrary to applicable federal law or an unreasonable determination of fact.  Claim 19 should therefore be dismissed.

51.    In Claim 20, Dillon alleges that trial counsel failed to object to prosecutorial misconduct.  (Doc. 1-1 at 70).  In rejecting this claim, the circuit court found,

This claim is without merit. Dillon's petition has failed to establish any actual prosecutorial misconduct and has failed to establish that any objection would have been sustained. Also, Dillon has failed to establish that but for counsel's failure to object, there is a reasonable probability of a different outcome. The evidence overwhelmingly established that Dillon forged several documents which she then used to obtain the victim's home, furnishings, car, and other items. Consequently, Dillon has failed to establish either deficient performance or prejudice as required by *Strickland* and claim III(h)(4) must fail.

(DOC 1-3 at 86-87; Pet. Ex. 28 at 24-25).

52.    This finding is not contrary to applicable federal law or an unreasonable determination of fact.  Claim 20 should therefore be dismissed.

53.    In Claim 21, Dillon alleges that trial counsel failed to familiarize himself with the details of Dillon's case and the elements of her convictions.  (Doc. 1-1 at 79).  She claims trial

counsel failed to move to strike "either the credit card fraud or the embezzlement, as they were both

for the same, thing, but had conflicting elements." (Doc. 1-1 at 80). She alleges that counsel "failed

to familiarize" himself with the connection between Thompson's case and Dillon's case. In

rejecting this claim, the state habeas court found that:

> Dillon alleges that counsel was ineffective for failing to understand the details of
> the case and elements of the crimes. This claim is without merit. In support of her
> argument, Dillon points to a single passage during counsel's motion to strike and
> argues that it is evidence that counsel did not understand the charges or the
> elements of them. However, it is necessary to look at the context, before drawing
> any conclusions about a single statement. The Supreme Court has held, "Absent
> clear evidence to the contrary in the record, the judgment of a trial court comes to
> us on appeal with a presumption that the law was correctly applied to the facts.
> Furthermore, *we will not fix upon isolated statements* of the trial judge taken out
> of the full context in which they were made, and use them as a predicate for
> holding the law has been misapplied." *Yarborough v. Commonwealth*, 217 Va.
> 971, 978, 234 S.E.2d 286, 291 (1977) (emphasis added). *See also Lawlor, Mark v.
> Commonwealth*, 285 Va. 187, 214, 738 S.E.2d 847 (2013) (the court will look at a
> challenged jurors entire *voir dire*, not isolated statements); *Stevens v.
> Commonwealth*, 283 Va. 296, 303-304, 720 S.E.2d 80 (2012) (court *will look at
> context of defendant's statements* regarding a lawyer to determine if an attorney
> was requested). Consequently, this Court cannot look at a single statement in
> isolation in determining counsel's understanding of the law. Instead a proper
> analysis of the lawyer's "performance" requires the court to consider "all the
> circumstances." *See Bullock v. Carver*, 297 F.3d 1036, 1046-1051 (10th Cir.
> 2002). To put it another way, in analyzing a claim that trial counsel "should have
> done something more, [the Court] first look[s] at what the lawyer did in
> fact." *Chandler v. United States*, 218 F.3d 1305, 1320 (11th Cir. 2000). In
> reviewing the entire trial transcript, and specifically, the remaining parts of the
> motion to dismiss, it is evident that trial counsel knew the details of the case and
> knew the elements of the charges. Therefore, Dillon has failed to establish either
> deficient performance or prejudice as required by *Strickland* and claim III(e)(6)
> must fail.

(DOC 1-3 at 80-81; Pet. Ex. 28 at 18-19).

54.    In addition, Dillon now adds that the charges of embezzlement and credit card

fraud should have been struck because they "were the same thing." This claim is directly refuted

by the record. The Commonwealth presented evidence to the jury that the embezzlement charge

was for taking possession of Thompson's entire bank account. (Tr. 3/16/2016 at 216). The

-21-

Commonwealth then explained that the credit card fraud charge was for using the victim's credit card, which was connected to the bank account, for a specific fraudulent purpose. (Tr. 3/16/2016 at 217). To the extent this court deems this to be a "new" claim not raised in state habeas, it is not substantial and must fail. If this court deems it to be an attempt to explain the already existing claim, it must fail as it is directly refuted by the trial court record.

55.     In Claim 22, Dillon alleges that appellate counsel, Robert Dean, "failed to object to an outrageous and unsubstantiated amount of restitution." (Doc. 1-1 at 91). She claims that she was ordered to pay "a shocking $98,900.00" despite the lack of "a list, an assertion of what was stolen, [o]r the value of the items." (Doc. 1-1 at 91). In Claim 23, Dillon alleges that appellate counsel failed to object to Dillon being sentenced by the judge for "stealing a house." (Doc. 1-1 at 96).

56.     Both Claims 22 and 23 were presented in the circuit court and dismissed. In finding that Dillon failed to satisfy either prong of the *Strickland* analysis, the circuit court stated,

> The jury found Dillon guilty of embezzlement, grand larceny, larceny of a firearm, three counts of uttering a forged public document, use of a forged certificate of title, obtaining certificate of title, perjury, credit card fraud, obtaining money by false pretenses, and money laundering. The trial court determined that the appropriate restitution amount for these crimes was $98,000. That figure was reasonable given that Dillon had sold the victim's home, furnishings, and car without his knowledge or permission. There was no basis for counsel to object to the amount of restitution. In addition, Dillon was not sentenced for "something that was not a crime." She was sentenced for the multiple felonies of which the jury found her guilty. Again, there was no reasonable basis for counsel to make such an objection. Therefore, Dillon has failed to establish either deficient performance or prejudice as required by *Strickland* and claim IV(a) must fail.

(DOC 1-3 at 88; Pet. Ex. 28 at 26).

57.     These findings are not contrary to applicable federal law or an unreasonable determination of facts. Therefore, Claims 22 and 23 should be dismissed.

58.     In Claim 24, Dillon alleges that appellate counsel "failed to familiarize himself with the details of the case, filing incorrect motions and inadequate briefs." (Doc. 1-2 at 1). She asserts that appellate counsel included "untrue facts" in the motion to set aside the verdict and on direct appeal, stating that Dillon had been convicted of forgery, which was incorrect. (Doc. 1-2 at 2-5).

59.     These assertions are materially similar to what was presented to, and rejected by, the circuit court, which found that Dillon failed to establish either deficient performance or prejudice as required by *Strickland.* The circuit court found,

> Dillon argues that counsel was unaware of the facts of her case, specifically, that Thompson, the victim, was being held on bond, not without bond, and that counsel believed she had been convicted of forgery when she had not. Whether the victim was being held on bond or not is irrelevant to any issues before this court. Thompson testified that Dillion used his credit card and conveyed the title to his home and his car without his permission. The amount of his bond was not relevant to determine whether Dillon was acting with permission or not. While it is true that Dillon was not convicted of forging a public document, the evidence clearly showed that she forged the instruments which conveyed the title to the victim's home and car to her. Counsel was not wrong in asserting that the jury found that she forged the documents and that the evidence established that she forged the documents. Moreover, counsel was not ineffective for failing to raise this issue on appeal. Counsel's choice of which issues to raise on appeal is virtually unassailable. *See Jones v. Barnes*, 463 U.S. 745 (1983) (counsel cannot be found ineffective for failing to raise every non-frivolous issue identified by a defendant); *Townes v. Commonwealth*, 234 Va. 307, 320, 362 S.E.2d 650, 657 (1987) (appellate counsel decides what questions should be raised on appeal). This is true because "appellate counsel is given significant latitude to develop a strategy that may omit meritorious claims in order to avoid burying issues in a legal jungle." *Burket v. Angelone*, 208 F.3d 172, 189 (4th Cir. 2000). As a result, Dillon has failed to establish either deficient performance or prejudice as required by *Strickland* and claim IV(b) must fail.

(DOC 1-3 at 88-89; Pet. Ex. 28 at 26-27).

60.     These findings are not contrary to applicable federal law or an unreasonable determination of fact. Claim 24 should be dismissed.

**No Substantial Claim**

61.     Dillon did not properly present her ineffective assistance claims 10, 25, and a portion of claim 26 to any state court. The ineffective assistance of counsel claims raised by Dillon in these claims are not substantial and are ultimately without merit. *See Martinez,* 566 U.S. at 10-11 (holding that *pro se* petitioner may demonstrate cause for default only of an ineffective assistance of counsel claim under equitable rules where such claim is substantial). In *Martinez*, the Court created a narrow exception to the rule it announced in *Coleman* v. *Thompson*, 501 U. S. 722 (1991), "that an attorney's ignorance or inadvertence in a post-conviction proceeding does not qualify as cause to excuse a procedural default." *Id.* at 1315.  The Court qualified *Coleman* by holding that "inadequate assistance of counsel [or no counsel] at initial review proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance of counsel. *Id.* at 1320. The ineffective assistance of counsel claims currently before this Court are not "substantial" and *Martinez* does not prevent this Court from finding the claims are simultaneously exhausted and defaulted.

62.     In claim 10, Dillon alleges that counsel was ineffective for failing to inform her about the possible sentences she could receive. This claim is without merit and is refuted by her own exhibit. The respondent's exhibit 13 (DOC 1-3 at 36), explains the plea offer that was made to her. The exhibit also contains the notations that show Dillon refused the plea offer "Bc [she] will lose her job" and that counsel "told [her that she] could spend the rest of life in jail." In addition, next to the 15 active charges she was facing is an annotation identifying the sentencing range for each charge. The record makes clear Dillon was aware of the possible sentencing range and there is no credible evidence that she believed the most she was facing was six months. The six months was the high end of the guidelines for the plea offer, which involved dropping nine of

the charges and pleading guilty to the remaining six charges. Dillon has failed to establish that counsel's performance was deficient or that there was a reasonable probability of a different outcome. As a result, this claim is not substantial and should be dismissed.

63. In claim 25, Dillon asserts that counsel was ineffective for failing to "raise a claim of prosecutorial misconduct on appeal." This claim is without merit. An attorney need not raise on appeal every non-frivolous issue requested by defendant. *Jones v. Barnes*, 463 U.S. 745 (1983). Rather, it "is the hallmark of effective appellate advocacy" to select the strongest claims and focus on those on appeal. *Burger v. Kemp*, 483 U.S. 776, 784 (1987). Under the circumstances, Dillon has not met her burden to prove there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different. *See Gray v. Warden*, 281 Va. 303, 307, 707 S.E.2d 275, 282 (2011) (holding petitioner failed to meet *Strickland* burden, given the deference afforded appellate counsel's choice of issues and petitioner's failure to articulate a viable issue that counsel should have, but failed to, raise). Therefore, Dillon has failed to establish that counsel's performance was deficient or that there was a reasonable probability of a different outcome. As a result, this claim is not substantial and should be dismissed.

64. In a portion of claim 26,[4] Dillon alleges that counsel was ineffective, saying:

> Counsel's errors and disregard for Dillon's defense were so severe that he failed to act as her advocate. He allowed her defense to be unfairly removed, and then took her to trial with her proverbial hands tied behind her back, silenced her and used misinformation and deception to accomplish it. He refused to address Dillon's accusations, only lending them further credence.

(DOC 1-2 at 15). This claim is cumulative of other claims raised in this petition and to the extent Dillon is attempting to raise any new claims, she has failed to proffer any facts sufficient to

---

[4] In other portions of claim 26, Dillon raises arguments of due process and sufficiency of the evidence, these are not the types of claims that *Martinez* can address.

establish deficient performance or prejudice. *See generally Beaver v. Thompson*, 93 F.3d 1186, 1195 (4th Cir. 1996) ("[A]n allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced."). *See also Bassette v. Thompson*, 915 F.2d 932, 940-41 (4th Cir. 1990) (petitioner must allege "what an adequate investigation would have revealed.")  "[W]ithout a specific, affirmative showing of what the missing evidence or testimony would have been, 'a habeas court cannot even begin to apply *Strickland*'s standards because it is very difficult to assess whether counsel's performance was deficient, and nearly impossible to determine whether the petitioner was prejudiced by any deficiency in counsel's performance.'"  *Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994) (quoting *United States ex rel. Partee v. Lane*, 926 F.2d 694, 701 (7th Cir. 1991)) (emphasis added).

## Conclusion

65.     This Court should conclude that petitioner's claims are lack merit and dismiss the habeas petition.

66.     Each and every allegation not expressly admitted by the respondent should be taken as denied.

67.     The lack of merit of the petitioner's claims is ascertainable from the record and an evidentiary hearing should not be held in this Court.  *See* 28 U.S.C. § 2254(e)(1) and (e)(2). Furthermore, the respondent waives oral argument unless it would be helpful to this Court's consideration of the motion to dismiss.

68.     The respondent has requested that the pertinent state court records be forwarded to the Court and has filed the Pertinent State Records form this same day with this Court.

**WHEREFORE**, the respondent moves this Court to dismiss the present petition for a writ of habeas corpus.

Respectfully submitted,

**DIRECTOR,**
**DEPARTMENT OF CORRECTIONS,**

By:  _____/s/_____
Craig W. Stallard
Senior Assistant Attorney General
Virginia State Bar No. 43227
Attorney for Respondent

OFFICE OF THE ATTORNEY GENERAL
202 North 9th Street
Richmond, Virginia 23219
(804) 786-2071          phone
(804) 371-0151          fax
oagcriminallitigation@oag.state.va.us

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on June 23, 2022, I electronically filed the foregoing Brief in Support of

Motion to Dismiss and Rule 5 Answer with the Clerk of the Court using the CM/ECF system;

and I certify that I have mailed the document and a copy of the Notice of Electronic Filing (NEF)

by United States Postal Service to: Shebri Stacy Dillon, No. 1747708, Fluvanna Correctional

Center, 144 Prison Lane, Troy, Virginia 22974, petitioner, *pro se*.

By:     /s/_____
            Craig W. Stallard
            Senior Assistant Attorney General
            Virginia State Bar No. 43227
            Attorney for Respondent

            OFFICE OF THE ATTORNEY GENERAL
            202 North 9th Street
            Richmond, Virginia 23219
            (804) 786-2071     phone
            (804) 371-0151     fax
            oagcriminallitigation@oag.state.va.us